# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUIS CEDILLO, | : |
|     Petitioner, | : |
| | :    No. 1:19-cv-951 |
| v. | : |
| | :    (Judge Rambo) |
| CATRICIA HOWARD, | : |
|     Respondent. | : |

## **MEMORANDUM**

On June 3, 2019, *pro se* Petitioner Luis Cedillo ("Cedillo"), who is currently confined at the Federal Correctional Institution Allenwood in White Deer, Pennsylvania ("FCI Allenwood"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Cedillo challenges the decision of a Disciplinary Hearing Officer ("DHO") who found him guilty of assaulting other inmates. (*Id.*) After Cedillo paid the requisite filing fee, the Court directed Respondent to show cause why Cedillo should not receive the relief he seeks. (Doc. No. 4.) Respondent filed a response on July 11, 2019. (Doc. No. 6.) Cedillo has neither filed a traverse nor filed a motion for an extension of time to do so. Accordingly, because the time period for filing a traverse has expired, this matter is ripe for disposition. For the following reasons, Cedillo's § 2241 petition will be denied.

**I. BACKGROUND**

On August 4, 2018, inmates at FCI Fort Dix assaulted other inmates by hitting them with locks in socks. (Doc. No. 6-1 at 6, 9.) The injured inmates required outside treatment for lacerations, bleeding, and facial bruising. (*Id.* at 6, 9, 13-14.) Following the assault, a special investigative agent ("SIS") began an investigation. (*Id.* at 6, 9.) Upon completion of the investigation, the agent determined that Cedillo and another inmate had committed the assault. (*Id.*) The injured inmates positively identified Cedillo as one of the inmates who assaulted them. (*Id.* at 6, 9, 18-20.)

On October 3, 2018, Cedillo received a copy of Incident Report Number 3172144, charging him with a violation of Code 224, Assaulting Any Person. (*Id.* at 5, 9.)[1] Cedillo was advised of his rights, stated that he understood them, and remarked "I have nothing to say." (*Id.* at 10.)

On October 16, 2018, Cedillo appeared before the Unit Discipline Committee ("UDC").[2] (*Id.* at 9.) When asked about the incident, Cedillo responded that he had

---

[1] The record reflects that the Incident Report was "re-written and re-processed through the disciplinary process." (Doc. No. 6-1 at 6.) The DHO determined, however, that "[t]he processing of this incident report did not violate [Cedillo's] due process rights [because he was] provided sufficient notice concerning the allegations against [him], and [he was] able to prepare a defense." (*Id.*)

[2] The UDC hearing was held after more than five (5) working days of when staff became aware of the incident had passed. (*Id.* at 5.) The DHO noted, however, that there "was a memorandum from the Warden approving the [UDC] hearing." (*Id.*) Respondent has included the memorandum as part of the record. (*Id.* at 8.)

2

"no comment." (*Id.*) The UDC referred the Incident Report to the DHO for further proceedings based on the seriousness of the offense. (*Id.* at 9-10.) Cedillo signed an acknowledgment of his receipt of the Inmate Rights at Discipline Hearing Form and Notice of Discipline Hearing Before the DHO and indicated that he did not want a staff representative and that he had no witnesses he wished to call on his behalf. (*Id.* at 11-12.)

On October 16, 2018, Cedillo appeared before the DHO, who advised him of his rights. (*Id.* at 5.) During the hearing, Cedillo indicated that the report was not entirely true, stating that "the shot caller for the 'Blacks' came to me and asked me [to] deal with a problem with the 'Columbians' because I am the shot caller for the 'Mexicans'; there was a big meeting in the third floor quiet room with the 'Columbians' and things got out of control." (*Id.*) He also stated, "I don't want [to] say anymore because it will follow me at my next institution; it is frowned upon if I cooperate with you." (*Id.*)

The DHO first noted that "this incident report was re-written and re-processed through the disciplinary process." (*Id.* at 6.) The DHO concluded, however, that Cedillo's due process rights were not violated because he received sufficient notice of the charge and was able to prepare a defense. (*Id.*)

3

The DHO found the charge of Code 224, Assaulting Any Person, to be supported by the greater weight of the evidence. (*Id.* at 6.) In doing so, the DHO, considered the Incident Report, the Inmate Investigative Report, the medical assessment of one of the injured inmates, and Cedillo's statement. (*Id.*) The DHO concluded that the injured inmate's statement was more credible than Cedillo's. (*Id.*) The DHO also noted that both injured inmates identified Cedillo as one of their assailants. (*Id.*)

The DHO sanctioned Cedillo with disallowance of twenty-seven (27) days of good conduct time and six (6) months' loss of commissary and email privileges. (*Id.* at 7.) The DHO issued his report on November 30, 2018, and a copy was delivered to Cedillo that same day. (*Id.*) Cedillo appealed to the Bureau of Prisons ("BOP")' regional office, which denied his appeal on December 21, 2018. (Doc. No. 1 at 30.) He subsequently appealed to the Central Office, which notified him that its response was due on or before May 17, 2019. (*Id.* at 32.) The Central Office subsequently notified Cedillo that additional time was needed to respond. (*Id.*)

Cedillo then filed the instant § 2241 petition. In his petition, Cedillo argues that his due process rights were violated because: (1) his UDC hearing was not held within five (5) working days of the incident; (2) the DHO "gave SIS the opportunity to rewrite the incident report"; (3) the DHO "relied on hearsay and [Cedillo]

4

invoking [his] right to remain silent instead of physical evidence and proven facts to support his decision"; (4) Officer Roman "bust[ed] into [his] cell" and charged him with the assault because he is Mexican; and (5) the BOP "did not respond to [his] appeal by May 17, 2019." (*Id.* at 6-9.) As relief, Cedillo requests that the Incident Report be expunged and that his privileges and good conduct time be restored. (*Id.* at 8.)

## II. DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557. Because Cedillo's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial

5

decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq*., and entitled *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the

6

Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. Under the regulations, an inmate "*ordinarily* receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." *Id.* § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24

hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

### A. Cedillo Received His Due Process Rights

Contrary to Cedillo's arguments, he received his procedural due process rights under *Wolff* and the BOP regulations. Cedillo contends that his due process rights were violated when the UDC did not hold his hearing within five (5) working days. (Doc. No. 1 at 6.) However, he fails to show any prejudice that resulted from the delay. *See Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011). Cedillo also

contends that due process was violated when the DHO gave SIS the opportunity to rewrite the Incident Report instead of dismissing the charge. (Doc. No. 1 at 7.) Again, "[e]ven assuming *arguendo* that it was a violation of a [BOP] regulation or policy for the incident report to be rewritten, [Cedillo] has not established that such a violation prejudiced him." *Tucker v. Martinez*, No. 1:10-CV-1057, 2010 WL 3191896, at *3 (M.D. Pa. July 20, 2010), *Report and Recommendation adopted*, 2010 WL 3191897 (Aug. 11, 2010).

The record reflects that Cedillo received the rewritten Incident Report on October 3, 2018, and the hearing before the DHO was held on October 26, 2018. (Doc. No. 6-1 at 5.) Cedillo chose not to have any witnesses testify on his behalf and chose to proceed without a staff representative. (*Id.*) Moreover, Cedillo received a copy of the DHO's written decision, which included a review of the evidence relied upon and the rationale behind the disciplinary action, on November 30, 2018. (*Id.* at 7.) For these reasons, the Court finds that Cedillo received all the due process procedures to which he was entitled.

### B. The DHO's Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has attached to his response the Incident Report, the DHO Report, medical records, and the Inmate Investigative Report. (Doc. No. 6-1 at 5-10, 13-20.) These documents

unequivocally establish that there was some evidence supporting the DHO's decision.

The DHO provided the following in his decision finding Cedillo guilty of Code 224, Assaulting Any Person:

> The DHO finds that on August 4, 2018, at approximately 6:00 p.m. you committed the prohibited act of Assaulting Any Person, code 224.
>
> The specific evidence relied upon includes the written statement of the reporting staff member, in which M. Bittner states: "Upon completion of an SIS investigation on Sep 20, 2018, it was determined that inmate Cedillo, Luis . . . assaulted inmates[] Gallardo-Gonzalez, Linberto . . . and Hernandez, Edwin . . . in building 5811, on Aug 04, 2018 at approximately 6:00 p.m. Information was received that Cedillo [and] Garcia-Porfiro assaulted inmates[] Gallardo-Gonzalez[] and Hernandez because they believed inmate Hernandez was providing information to staff. Cedillo and Garcia-Porfiro pulled out locks in socks and attacked both, which resulted in injuries. Gallardo-Gonzalez had bleeding and bruising on his face and his head and a laceration. Hernandez had bleeding and bruising, and a laceration from the right temple to midline of the forehead. Both inmates required treatment from the outside local hospital. Inmate Gallardo and Hernandez positively identified Garcia-Porfiro and Cedillo as the inmates responsible for assaulting them. Based on documented physical injuries, photographs, and inmate statements code 224 is warranted."
>
> . . .
>
> The DHO considered the Inmate Investigative Report which contains the statements from inmates Gallardo-Gonzalez and Hernandez. Inmate Hernandez positively identified you as the assailant who hit him in the head with a lock in a sock.

The DHO considered the medical assessment of inmate Hernandez, which states, he received a laceration to his right temporal to the midline forehead from an apparent assault.

The DHO took into account your statement, in which you stated, that the report is not entirely true; the shot caller for the "Blacks" came to me and asked me [to] deal with a problem with the "Columbians" because I am the shot caller for the "Mexicans"; there was a big meeting in the third floor quiet room with the "Columbians" and things got out of control; However, you then stated, I don't want [to] say anymore because it will follow me at my next institution; it is frowned upon if I cooperate with you. The DHO believes that if you had exculpatory evidence you would have presented it as your defense. This cases the DHO to draw an adverse inference against you.

Accordingly, the DHO finds inmates Hernandez['s] statement to be more credible that you assaulted him with a lock in a sock.

The DHO weighed the facts of the case. The DHO finds, based upon the greater weight of evidence, you committed the prohibited act of Assaulting Any Person, code 224.

(Doc. No. 6-1 at 6.) Moreover, the DHO explained the imposed sanctions, stating:

The action/behavior on the part of any inmate to assault another inmate or staff, whether or not serious injury is inflicted, threatens the health, safety, and welfare of not only the inmates involved, but that of all other inmates and staff. Inmates observing the assault may become involved this created a larger disturbance for staff to control. Assaults make it difficult to provide security for all concerned. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

The sanction involving the loss of Good Conduct Time was imposed to comply with the mandatory sanction requirement. The sanctions involving the loss of Email and Commissary privileges is meant to demonstrate the seriousness of this offense to you, as well as everyone incarcerated at this facility.

(*Id.* at 7.)

Cedillo appears to suggest that the evidence was insufficient to support the DHO's finding, arguing that the DHO relied upon hearsay and Cedillo's invocation of his right to remain silent "instead of physical evidence and proven facts." (Doc. No. 1 at 7.) The record, however, reflects that Cedillo did not remain silent during his hearing before the DHO; instead, he provided the statement set forth above. Moreover, the United States Court of Appeals for the Third Circuit has noted that "a decisionmaker may rely on hearsay evidence in a prison disciplinary proceeding." *Carter v. Lawler*, 446 F. App'x 420, 423 (3d Cir. 2011). Furthermore, as noted above, when an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56). Thus, these decisions foreclose Cedillo's argument that there was not "some evidence" to support the DHO's conclusion that he was guilty of violating Code 224, Assaulting Any Person.[3]

---

[3] Cedillo also suggests that his due process rights were violated when the BOP's Central Office did not respond to his appeal by May 17, 2019. (Doc. No. 1 at 9.) Inmates, however, do not have a constitutionally protected right to the prison grievance and administrative remedy process. *See Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Moreover, even if the Central Office did not follow its own regulations regarding the timing of responses, Cedillo fails to show any prejudice from such.

### C. Cedillo's Equal Protection Claim

Cedillo also claims that his equal protection rights were violated because he was "handpicked" for disciplinary proceedings because he is Mexican. (Doc. No. 1 at 8.) To succeed on such a claim, Cedillo "must demonstrate that the decision makers in his case acted with a discriminatory purpose." *Lloyd v. Shartle*, 514 F. App'x 77, 80 (3d Cir. 2013) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). Other than his conclusory assertion, Cedillo has provided no evidence to suggest that the investigating officers and the DHO charged him with a violation of Code 224 solely because he is Mexican. Thus, Cedillo is not entitled to relief on his equal protection claim.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Cedillo was accorded all of his due process rights under *Wolff* and the BOP regulations, and that there was some evidence supporting the DHO's decision. Accordingly, Cedillo's § 2241 petition (Doc. No. 1) will be denied. An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 1, 2019

13